Good morning, your honors. I'm Karen Bucher and I represent the appellant. This is the case where Mr. Dominguez argues that his indictment for illegal re-entry should have been dismissed. Why don't you wait until the people leave, it is distracting. Okay. All right, go ahead. I'm Karen Bucher and I represent the appellant. This is the case where Mr. Dominguez argues that his indictment for illegal re-entry should have been dismissed because his underlying 1998 removal proceedings violated his right to due process. And the proceedings violated his right to due process because at the hearing, the immigration judge failed to advise him he had this certain relief from deportation that was unique to his situation. At the hearing, the immigration judge could see how he was suffering. He was very sick, he had a painful infection in his sinuses, in his ears, and the jail was not treating him. He was getting worse and worse and he was in this intense pain. And the immigration judge could also see he wanted to stay in the United States, he had a wife and children, and that he wanted his wife to adjust status but that would take too long. He was choosing to go to Mexico because he needed to take care of his medical needs. There was a third option that the immigration judge did not tell him that would have been just perfect. He would have been able to go to Mexico to take care of his needs and he could pursue his adjustment of status and this is what that was. He could apply right away for permission to find out whether or not the government would allow him to reapply. So he would know before he would leave that he would have permission to reapply and at the same time he could apply for advanced parole which would mean he could go to Mexico, address his needs, and he wouldn't strip the immigration court of any jurisdiction. So he can go to Mexico, take care of himself, and then in the United States the immigration judge could do a full merit review of his adjustment of status request. And he was prejudiced because it's plausible that he would have received relief from the waiver of convictions because in this court, the focus, he has to show extreme family hardship. And in this circuit, the focus is on the family unit, the preservation of the family unit, to keep that family together. And Mr. Dominguez provided evidence of this. His wife, they met in high school, they got married, they had two children, and she said, even though she was the breadwinner, they couldn't live with each other. His bond with the children were very strong. He was the rock of emotional support. And the son, who was 14 in 1998, he said, I was very close to my dad. He taught me how to stay on the right path. He gave him love and affection. But he had some pretty bad facts, too. For the 10 years preceding his arrest, he spent the majority of that incarcerated. He wasn't living with his family. He was living with his mother at the time. He has a substantial criminal history. So how do we weigh those facts in terms of assessing his plausibility for the waiver relief? Because his relationship with his family was when he was in prison. In the excerpt of the record, there are numerous letters going back and forth that show the love and affection that this family really had. It was a different family situation, but the children relied on him for guidance and love. His youngest daughter said, my dad was in prison, and that's what I remember, but I still relied on him. The son said, we relied on him when we had problems. It was a different relationship, and yes, those are bad facts, and he was in prison for all that time. But getting back to what the law is on extreme hardship, it is not to separate the family unit. Extreme hardship does not exist when it's just economics involved, where you go to Mexico or wherever, and you lost your job, or you have to relocate and that's inconvenient. In those cases, you cannot establish extreme hardship. The law is, it's the family unit that doesn't need to be separated. He was in prison, but that wasn't forever. Mexico is forever, and that's what the difference is. If we disagree with you, do we affirm without prejudice or vacate for resentencing? The sentencing issue is totally separate. It would still vacate. With regard to the sentencing? Yes, Your Honor. Because he's now been deported, right? Yes, he has been, Your Honor. So what relief are you asking for with regard to the sentence? Do we resentence under DACOM? And I don't think the government opposes. He received a 16-level enhancement because of the underlying verbal abuse. But is there an indication that he's waived his presence at sentencing? He's entitled to sign the Rule 43 form, which would waive his presence, and he might do that. That's something that he can do. But hasn't done so already? Well, he can't until we're back into the district court, Your Honor. Okay. Then the second reason why the indictment should be dismissed is that the judge told him that he was removable. But the procedural violation there is that the immigration judge did not follow the requirement of finding removability based on competent and sufficient evidence produced at the removal hearing. Because a finding of removability without an evidentiary basis violates one's due process, because you need to have a full and fair hearing. Evidence needs to be presented. In this case, Mr. Dominguez did admit to the facts in the notice of repair during the pleading stage, but he never admitted to removability. Those two factors need to be found. So since he didn't admit to removability, or concede to removability, then it goes to the evidentiary stage. At that point, the government should have produced, that's when the government should have produced the state court documents in their view to prove that he's removable. And what's interesting about this case, the evidence presented at the removal hearing just says burglary. It doesn't say first or second degree burglary. This is burglary. And during the removal hearings, he just admits to burglary. Well, on that record, you can't prove removability because it could have been a second degree burglary, which is not an aggravated felony. Thank you. You're welcome. May it please the court, Sandra Haygood on behalf of the United States. To begin with the defendant's first argument, in this case, there was no due process violation because the immigration judge carefully and conscientiously informed the defendant of the remedies that were available to him for relief from removal. The I.J. informed the defendant that he could apply for an I-12 waiver and that he could apply for a visa via his wife and for adjustment of status. What the defendant is arguing... They tell him that would take a long, long time. The I.J. certainly didn't use the words, it will take a long, long time. Well, why didn't he? Well... It will take a long, long time. Those things do take time. Long, long time. I suppose that that's a fair characterization, Your Honor. Five or ten years. That is correct, Your Honor. However, the important consideration... He said he wanted to go back to Mexico because they had doctors there that he thought could help him. Yes, Your Honor, that's correct. The defendant was unhappy with the medical care that he was receiving and for that reason he was eager to return to Mexico. And that's really a big part of the problem with the defendant's argument because what the defendant is proposing that the I.J. should have done really amounts to what is much more than this Court has said is the I.J.'s duty. The I.J.'s duty is to inform the defendant of available relief. And that's what the I.J. did. What the defendant argues is that the I.J. should have taken much further involvement that really would amount to almost coming down from the bench and sitting next to the defendant at the table and really advising him in a very detailed way, not... ...concerning a person who shows up without counsel. They have to get a waiver of counsel, too. Yes, and that was done in this case. But his duty in order to fulfill the... Isn't this written out explicitly what he should do, the I.J., in this situation? I'm sorry, Your Honor, I don't understand exactly what you mean. Well, isn't there a rule that tells the I.J. in a situation like this where you have a person without a lawyer who apparently wants to get things moving and you take a waiver of counsel from him after you've advised him why it's important to have a lawyer? So when it comes to, you know, the immigration service takes the view that a disbarred lawyer is better than no lawyer, you know that. Okay, so I understood that the obligation was a little broader than what you're saying it is. You know, you have to tell them what the consequences are. If you leave the country, yeah, you can go try to get a visa and all that, but, you know, by the time you get back here, you might be a grandfather, huh? He didn't know that, did he? No, Your Honor, but the I.J. definitely... The answer is yes, he didn't know that. Yes, yes, he didn't know, yes, Your Honor. But the I.J.'s duty is to inform him of his relief, which the I.J. did, and the I.J. did say, and I don't remember the exact language, but he definitely allowed him to understand and informed him that it would be an indeterminate amount of time. But even if the I.J. had done what the defendant argues and advised the defendant not about an available relief, but about the procedure whereby the most optimal method of obtaining that relief could be used by the defendant, the time would have been shorter, arguably, but the defendant still would have had to remain in custody for an indeterminate amount of time, and that appears to be something that the defendant was not willing to do. But the bottom line is that... You know, it's not a simple area that you're moving into, and there are resources there that I can give you a phone number and address of, and perhaps you can get an attorney that way. That's true, he could have said that, but the defendant has cited no case law, and I know of no case law that would require that, and that something less than that is a violation of the defendant's due process rights. In addition, it seems that the heart of the defendant's argument is that the defendant was not, in fact, removable as an aggravated felon, and I believe that the defendant confuses the aggravated felony under 1101A43F and G. So the defendant relies considerably on de compte throughout the brief. However, de compte has nothing to do with whether the defendant is an aggravated felony under F, which is the relevant portion here for finding that the defendant was an aggravated felon for first-degree residential burglary. And several cases by this Court have repeatedly recognized that first-degree residential burglary under California law is an aggravated felony, and de compte is not to the contrary. And de compte would have to be completely irreconcilable with this Court's previous jurisprudence on that issue for de compte to have overruled it. All right. Unless the Court has further questions, the United States will submit on the brief. Thank you. Your Honors, the point is that the two options provided by the immigration judge were not meaningful to Mr. Dominguez. They wouldn't have helped him due to his medical condition. Try to keep your voice up. Thank you, Your Honor. The point is that the two options provided by the immigration judge were meaningless to Mr. Dominguez because they wouldn't have worked. The first one, he would have to stay in custody for years and years and years to have adjustment of status. And the second one, going to Mexico, then trying to reapply, there's a bar to that. Once you're deported, there's a deportation bar for you to come back. So either option would have not worked. The third option was the only meaningful option. And, Your Honor, there's an adjudicator's field manual, section 43.1H. It's in the brief, which addresses this. It says, if an alien is in the United States. But you have to speak a little louder. If there's a – in the adjudicator's – And a little slower. In the adjudicator's field manual, it says, which is for the immigration judges to rely on, it says, if an alien is in the U.S. in removal proceedings and would like to apply for adjustment of status, they may apply for advanced determination of whether he can reapply to the United States, which means while he's still here, he will know he can reapply without that deportation bar, and then ask for advanced parole so he can go back to Mexico without the court losing jurisdiction. And the condition is that he has to leave, then he leaves, and then he waits to find out what happens regarding his adjustment of status and waiver of convictions. All right. Thank you. You're welcome. This matter is submitted.
judges: Whaley, Pregerson, Nguyen